NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PROFESSIONAL ORTHOPEDIC ASSOCIATES, P.A., et al., | CIVIL ACTION NO. 15-8048 (JLL) |
| Plaintiffs, | **OPINION** |
| v. | |
| HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, | |
| Defendant. | |

**LINARES, District Judge**

This matter comes before the Court upon the plaintiffs' motion pursuant to Federal Rule of Civil Procedure (hereinafter, "Rule") 56 for summary judgment in their favor (hereinafter, "the Plaintiffs' Motion"), and the defendant's cross motion (hereinafter, "the Defendant's Cross Motion") pursuant to Rule 56 for summary judgment in its favor. (See dkt. 28 through dkt. 28-6; dkt. 29 through dkt. 29-7; dkt. 37 through dkt. 37-2; dkt. 38 through dkt. 38-4; dkt. 39.)[1]

The Court resolves the Plaintiffs' Motion and the Defendant's Cross Motion upon a review of the papers and without oral argument. See L.Civ.R. 78.1(b). For the

---

[1] The Court will refer to documents by the docket entry numbers and the page numbers imposed by the Electronic Case Filing System.

following reasons, the Court denies the Plaintiffs' Motion and grants the Defendant's Cross Motion.

## BACKGROUND

The Court presumes that the parties are familiar with the factual context and the procedural history of the action, and will only set forth a brief summary here. The Plaintiffs are: (1) Professional Orthopedic Associates, P.A. (hereinafter, "POA"); (2) Jason Cohen, M.D., F.A.C.S., who is a shareholder of POA; and (3) an individual identified as "Patient PK," who was treated by POA and Cohen. (See dkt. 1.) Patient PK "was and still is a member of, beneficiary of, participant in, and/or insured by a health insurance policy issued and/or administered by" the Defendant, which is Horizon Blue Cross Blue Shield of New Jersey. (Id.)

Patient PK apparently needed spinal surgery. He turned to POA and Cohen, who are not part of the Defendant's network of medical providers. POA and Cohen then treated Patient PK, and Patient PK assigned the rights to reimbursement from the Defendant to POA and Cohen in their status as out-of-network providers. (Id.)

POA and Cohen submitted a claim to the Defendant in the amount of $503,780 for the surgery performed on Patient PK in April 2015. The Defendant issued a determination on that claim (hereinafter, "the Determination"), and then reimbursed POA and Cohen for $38,931.62 after deducting Patient PK's portion that consisted of a coinsurance requirement, all of which was set forth in the Defendant's Explanation Of Benefits (hereinafter, "the EOB"). (See dkt. 29-5 at 2; dkt. 38-2 at 2–10.)

The Plaintiffs appealed to the Defendant from the Determination in June 2015 (hereinafter, "the June 2015 Appeal") and in August 2015 (hereinafter, "the August 2015 Appeal"). The Defendant answered the June 2015 Appeal in July 2015 (hereinafter, "the July 2015 Response"), and answered the August 2015 Appeal in September 2015 (hereinafter, "the September 2015 Response"). (See dkt. 1-1.) In the July 2015 Response and the September 2015 Response, the Defendant concluded that the Determination was consistent with the terms of Patient PK's benefit plan and with the allowances for the reimbursement of out-of-network providers such as POA and Cohen. The Plaintiffs now seek the entire difference between the amount of the claim by POA and Cohen, and the amount reimbursed by the Defendant, i.e., $464,848.38. (See dkt. 1 at 9–12; dkt. 1-1 at 6–53.)[2]

The Plaintiffs argue that the Determination was arbitrary and capricious, because the Defendant did not specifically explain the underlying reasoning and the underlying methodology to them, and because they were reimbursed an amount that they assert was significantly below the usual and customary rate for the surgery performed. (See dkt. 28-1.) However, the Defendant argues that it properly processed the claim for benefits, that it properly determined the amount to be reimbursed under the terms of the benefit plan to out-of-network providers, and that it assured that its reimbursement determination was correct. (See dkt. 29-1.)

---

[2] It is never explained in support of the Plaintiffs' Motion as to why Patient PK should be permitted to forgo a payment of the coinsurance portion, and thus why the Defendant should pay out the entire $464,848.38 difference.

# STANDARD OF REVIEW

## I. Summary Judgment

It is not necessary for the Court to restate the standard for resolving a motion for summary judgment made pursuant to Rule 56, because that standard has been already enunciated. See Fed.R.Civ.P. 56(a) (providing for an award of summary judgment if there is no genuine dispute of material fact and the movant is entitled to judgment as matter of law); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (setting forth the standard); United States ex rel. Kosenke v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009) (setting forth the standard).

Furthermore, the summary judgment standard is not affected when, as is the situation here, the parties file cross motions for summary judgment. See Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998); Appelmans v. City of Philadelphia, 826 F.2d 214, 216 (3d Cir. 1987).

## II. A Dispute Concerning A Benefits Reimbursement

The Employee Retirement Income Security Act (hereinafter, "ERISA") provides for a federal cause of action for a healthcare plan "participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

An administrative denial of ERISA plan benefits is reviewed under a *de novo* standard, unless that plan grants the administrator "discretionary authority to determine eligibility for benefits." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008). However, if the terms of the benefit plan give the administrator such discretionary authority, then the administrative denial is subject to a deferential standard of review, also known as an "arbitrary and capricious" standard or an "abuse of discretion" standard. See Miller v. Am. Airlines, Inc., 632 F.3d 837, 844 (3d Cir. 2011); Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413 (3d Cir. 2011).

The parties in this action agree that the Court should apply the arbitrary and capricious standard. (See dkt. 28-1 at 10 (the Plaintiffs arguing in support of the Motion that the "plan at issue provides [the Defendant] with complete authority to review all denied claims for benefits under the policy[,] and in exercising such fiduciary responsibility . . . it has the discretionary authority to determine whether and to what extent eligible beneficiaries are entitled to benefits and to construe any disputed or doubtful terms under the plan"); dkt. 29-1 at 13 (the Defendant arguing in support of the Cross Motion that a review may discern whether the "[D]etermination in this matter was arbitrary or capricious").)

## DISCUSSION

The Defendant has the authority to determine the reimbursement to be paid to out-of-network medical providers under the plan, which sets forth that allowance in the following provision:

> An amount determined by [the Defendant] as the least of the following amounts: (a) the actual charge made by the provider for the service or supply; or (b) in the case of In-Network Providers, the amount that the provider has agreed to accept for the service or supply; or (c) in the case of Out-of-Network Providers, and except as provided in the next sentence, the amount determined for the service or supply based on the Resource Based Relative Value System (RBRVS) promulgated by the Centers for Medicare and Medicaid Services; or (d) in the case of Out-of-Network providers, an amount determined for the service or supply based on: (i) profiles compiled by [the Defendant] based on the usual and prevailing payments made to providers for similar services or supplies in specific geographical areas; or (ii) similar profiles compiled by outside vendors.

(Dkt. 28-5 at 27; dkt. 29-4 at 27.) The Defendant has also determined that the reimbursement rate for out-of-network providers is 250% of the amount dictated by the fee schedule developed by the Centers for Medicare & Medicaid Services (hereinafter, "CMS"), and excludes from coverage any portion of a charge that exceeds that allowance. (See dkt. 29-4 at 135.)

As set forth above, the Defendant advised POA and Cohen that they were properly reimbursed as out-of-network providers for their medical services according to the terms of the plan covering Patient PK in the EOB, in the July 2015 Response, and in the September 2015 Response. Moreover, as set forth above, the terms of the plan provide that out-of-network providers are reimbursed for services rendered at 250% of the amount that would be paid pursuant to the fee schedule developed by CMS.

Furthermore, the EOB here explained that the full amount sought by the Plaintiffs was not reimbursed because: "There was no referral or authorization on file for these services. Therefore the claim was processed at your out of network level of benefits." (Dkt. 38-2 at 5.)

Thus, the Court finds that the Plaintiffs cannot prevail here, because the Plaintiffs have failed to set forth any specific facts from the record to support their argument that the Determination was arbitrary and capricious. It is apparent that the Defendant based the Determination on the plain language of the plan, and that the reimbursement granted to POA and Cohen in the Determination was consistent with the express language of the Plan. See N.J. Back Inst. v. Horizon Blue Cross Blue Shield Ins. Co., No. 12-4985, 2014 WL 809164, at *4 (D.N.J. Feb. 27, 2014) (granting summary judgment to a health benefit plan in a reimbursement dispute with an out-of-network provider, because the plan set forth the manner in which reimbursements were determined for out-of-network providers); Montvale Surgical Ctr. v. Horizon Blue Cross Blue Shield of N.J., Inc., No. 12-2378, 2013 WL 4501475, at *3–4 (D.N.J. Aug. 21, 2013) (granting summary judgment to a health benefit plan in a reimbursement dispute with an out-of-network provider based upon the same aforementioned reasoning).

The Plaintiffs argue that they have submitted other EOBs issued by the Defendant "showing that [the Defendant] paid significantly more in other cases than [it] did for the very same codes at issue in this case." (Dkt. 28-1 at 15; see dkt. 1-1 at 11–22 (supplying "other . . . EOBs, where there [sic] codes were paid significantly higher"); dkt. 1-1 at 36–47 (supplying the same).) This particular argument gave the Court pause, because the

argument might have merited an award of some form of relief to the Plaintiffs if it were indeed accurate. However, the Court concludes that those EOBs submitted by the Plaintiffs set forth disembodied reimbursement codes and are illustrative of nothing in particular. As the Defendant correctly argues concerning the aforementioned EOBs: "While Plaintiffs provided 'sample' EOBs to show what [the Defendant] and other insurers were allegedly paying for the services at issue, these EOBs provide no support for overriding the 'Allowance' <u>under the Plan at issue in this litigation</u>." (Dkt. 29-1 at 14 (emphasis added by the Court).) <u>See</u> <u>Atl. Spinal Care v. Aetna</u>, No. 12-6759, 2014 WL 1293246, at *9–10 (D.N.J. Mar. 31, 2014) (granting summary judgment to a health benefit plan in a reimbursement dispute with an out-of-network provider, and noting that "[b]y asking for more money, [the provider] essentially challenges the rates of reimbursement used without providing the Court with any reason or authority to do so"); <u>cf.</u> <u>Patient C.E. v. Excellus Blue Cross Blue Shield</u>, No. 14-6950, 2017 WL 593492, at *10, *13 (D.N.J. Feb. 14, 2017) (remanding a reimbursement dispute between a medical provider and a health benefit plan for further administrative review, because the plan initially failed to notify the plaintiff of its rationale for the amount paid or to state the geographic fee schedule that was being applied to determine the appropriate reimbursement). Therefore, the Court concludes that the Defendant is entitled to summary judgment here.

## CONCLUSION

For the aforementioned reasons, the Court: (1) denies the Plaintiffs' Motion for Summary Judgment; (2) grants the Defendant's Cross Motion for Summary Judgment; and (3) enters summary judgment in favor of the Defendant and against the Plaintiffs.

The Court will enter an appropriate order and judgment.

/s/ Jose L. Linares
JOSE L. LINARES
United States District Judge

**Dated:** May 8th, 2017